Henderson, Judge.
 

 The purchaser contracted for the wife’s estate of inheritance, not for the husband’s.freehold in her right, and has obtained a conveyance .which (tó make the most of it in its present form) transferred only the husband’s estate; but might, by the private.examination of the wife, have passed also her interest: ’ "And; no doubt can exist, but that the agreement of the parties was, that a conveyance effectual to pass the property agreed to be .sold should be made. This is evidenced- not only’by the nature of the contract, but by the transfer in its incipient state,. It is, therefore, entirely unlike the case where'the parties have done what they stipulated to do : — As in the case of a sale, of lands where the vendor has made a transfer : Although he may have transferred a defective title, the vendee cannot complain that the vendor has not done what he promised to do. If there was to be no warranty, the vendee has got what lie contracted for, and it was his fault or misfortune not to take one. If he was to have a warranty and has one, still he cannot complain that the contract had not been executed, although the vendor’s title was not good. I feel bound, therefore, to apply that universal principle of Equity, which forbids one party to take the benefit of a contract, whilst he entirely withholds per
 
 *476
 
 form anco on bis own parí j anil
 
 to
 
 arrest the money until be shall have performed it. For I look upon the deed in its present dress, as unexecuted for the purpose of having the effect intended
 
 ;
 
 ns an instrument sealed,
 
 but not
 
 delivered, where individuals under no incapacity to contract, are the parties. For as the Common Law has declared a delivery necessary to constitute/ a deed between them, the General Assembly have declared a private examination necessary to make a deed, or an effectual deed (which is the same tiling) from a married woman, to pass her lands. The rule in each case Sows from the same source, the legislative will, although evidenced in a different manner.
 

 As to the bond being payable to the wife’s son, or in trust for him, it makes no difference. He is a mere volunteer, and roust stand in the place of the vendor. The renewal of the bond by the administrator of the purchaser to the same person, does not alter its original nature. In Equity it is the same : each given upon the same consideration, and liable to the same rules of Equity. The demurrer must be overruled, and the Defendants answer.
 

 Taylor, Chief-Justice,
 

 contra. — 1 regret my inability to concur in the opinion of n>y brothers
 
 ",
 
 because it best accords with my private sentiments of natural justice, that a purchaser should he relieved against the payment of the price of land, from which he has been evicted through a defect of tifie. But not being able to arrive at such a conclusion by my view, of the Law, the wisdom of which I am bound to-consider superior to any man’s wisdom, I will state concisely the grounds of iny dissent.
 

 An injunction has been granted in this case, to stay a judgment at law, recovered under the following circumstances. Daniel and his wife executed to Charles Jones a deed for a tract of land, of which the wife was seised in fee, for the price of four hundred dollars ; to secure which sura, two bonds were given by Jones, with Moseley his security, each for two hundred dollars : one payable to Da
 
 *477
 
 niel Patrick, guardian of Silas Jones, a natural son of Daniel’s wife, for tlie benefit of said Silas; and soon af-terwards, Charles Jones, the purchaser, died. The bond given to Daniel .has been taken up by Lane, the Complainant, who administered upon Charles Jones’s effects. Lane gave his own bond to Patrick, in lieu of his intestate’s bond
 
 ;
 
 and upon that bond, suit has been instituted ag’ainst Lane, by the administrator of Silas Jones, who died soon after arriving at full age. Upon the death of Daniel, his widow never having been privily examined according to the act of 175!, entered upon the land, so sold by her husband and herself, expelled the tenant placed on it by Charles Jones, and soon afterwards died seised ; whereby the land descended upon her heirs. The consideration of the bond having thus failed, Lane, the administrator of Charles Jones, together with the heirs at law of the latter, seek to be relieved from the judgment. The Defendants •have demurred to the bill.
 

 No doubt can exist as to the legal operation of the deed from Daniel and wife. He acquired by the marriage, a freehold interest in the land during the joint lives of himself and his
 
 wife;
 
 and the only effect of the deed was to convey to Charles Jones, such estate as Daniel had. The execution of the deed by the wife was a nullity in respect to her right, unless the course, which the law has prescribed, had been pursued, to ascertain her consent. Though Daniel’s right only was in reality conveyed by the deed, yet it
 
 purported
 
 to operate upon the fee simple of the wife, whilst Daniel'endeavored to convey as much as by law he could do. This was the subject of the contract, and it is to be. presumed that the purchaser was aware of the ulterior steps necessary, to render the deed obligatory upon the wife. Without even looking into the title, there were plain and notorious facts, sufficient to satisfy any purchaser, that Daniel was about to sell his wife’s land : the deed was drawn in the name of the husband and wife ; she was called upon to execute it, and one half of the purchase
 
 *478
 
 money was made payable to her natural child. Here, then, was a full disclosure of the title which Daniel was about to sell; and fair notice given to the purchaser of Ayjja^. was necessary to its confirmation. There is not the slig'hest ground to impute to the seller, either fraud, misrepresentation or concealment.
 

 Under this statement of facts, I apprehend that the purchaser could have had no remedy at Law. He had a right to ask for a warranty, or for covenants against all persons claiming title to the land
 
 •,
 
 and if he chose to take a deed without that safeguard, the rule of
 
 caveat emptor
 
 must prevail. The case of Bree v. Holbeck, in Douglas, 654, shews, that where there is no fraud, the purchaser is without remedy at Law, unless his covenants provide it: and in Cripps v. Reade, 6 Term Rep. 606, the distinction is taken between those cases, where money paid on a consideration which has failed, may be recovered back, and where it cannot, excluding the cases where a regular conveyance has been made, to which other covenants were not to be added. “ With the exception of a vendor or his
 
 “
 
 agent suppressing an incumbrance or a defect in the
 
 “
 
 title, it seems clear that a purchaser cannot obtain any
 
 “
 
 relief for any incumbrance or defect to which his cove-
 
 “
 
 nants do not extend : and, therefore, if a purchaser ne-
 
 “
 
 gleet to have the title investigated, or his counsel over-
 
 “
 
 look any defect in it, he is without a remedy. It has
 
 “
 
 even been held, that if one sells another’s estate, without
 
 “
 
 covenant or warranty for the enjoyment, it is at the
 
 “
 
 peril of the
 
 purchaser;
 
 because he might have looked
 
 <{
 
 into the title | and there is no reason he should have an
 
 “
 
 action by the Law, when he did not provide for hiin-
 
 “
 
 self.”
 
 *
 

 The privy examination is substituted for afine, in which also the wife is privily examined touching her consent: and where a husband conveys his wife’s estate in England, it is the ordinary form of the conveyance, to contain a
 
 *479
 
 covenant on his part that the wife shall pass a fine. The proper covenant here would be, that the wife shall submit to a privy examination. It was once the practice of the Court of Equity to decree a specific execution of a covenant to levy a fine : but it was very absurd to compel a married woman to levy a fine, when the, efficacy of the conveyance is derived from her having done it voluntarily. Such a practice is therefore abandoned
 
 •,
 
 but the purchaser has still a remedy at Law, by an action cf covenant against the husband.
 
 *
 

 It is also laid down in the authorities that Equity proceeds on the same principle with the Law, unless there be fraud in concealing the defect of the title. In proof of this, the, strong case of
 
 Urmston v. Pate
 
 is cited, in 3 Cruise, 91. In the, more recent case of Wakeman v. Rutland, in 3 Ves. Junr. 234, the Lord Chancellor observes,
 
 ie
 
 As to the extent of the covenants, there was a case about
 
 ie
 
 three years ago. An estate was bought; as to one 45 moiety, there was a clear.defect of title, which the cove-44 nant of the, purchaser had overlooked. He was evicted 44 of one moiety. He filed a bill in Equity, asserting a 44 claim to be repaid a moiety of the purchase money. He
 
 iS
 
 had taken his conveyance with the common
 
 covenants; “
 
 tiie eviction was not within the covenants. I felt the ■e hardship, but thought I could not raise an Equity, where “ there was no covenant to warrant the title.” It is held that the possession of land is no evidence of title, and no person in his senses would take, an offer of purchase from a man merely because lie stood upon the ground. The purchaser must look to his title, and if he do not, it will be gross ncgligence.
 
 †
 
 To sustain the bill, is, in my apprehension, to alter and extend the agreement of the parties, not to enforce it, and to sanction a principle which goes the whole length of permitting the recovery back of the money which has been paid in this case, and in every ether, where the contract has been executed.
 

 *
 

 Sugden’s Letters, 35.
 

 *
 

 1 Bos. and Pull, N. P. 267.
 

 †
 

 13 Ves. 114.